1   J. Andrew Coombs (SBN 123881)
    *andy@coombspc.com*
2   Annie S. Wang (SBN 243027)
    *annie@coombspc.com*
3   J. Andrew Coombs, A P. C.
    517 East Wilson Avenue, Suite 202
4   Glendale, California 91206
    Telephone: (818) 500-3200
5   Facsimile:  (818) 500-3201

6   Attorneys for Plaintiff Nike, Inc.

7

8                   UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10

11  Nike, Inc.,                         )  Case No. CV 07-04706 CW (EDLx)
                                        )
12                        Plaintiff,    )  NOTICE AND MOTION FOR
                                        )  ENTRY OF DEFAULT
            v.                          )  JUDGMENT; DECLARATIONS
13                                      )  AND EXHIBITS IN SUPPORT
    Felix Ose Osifo, an individual and d/b/a  )  THEREOF
14  Osifo Hip Hop Clothing and Does 1 – 10,  )
    inclusive,                          )  Court:  Hon. Elizabeth D. Laporte
15                                      )  Date:    January 8, 2008
                          Defendants.   )  Time:   9:00 a.m.
16  _____)

17       TO THE COURT AND TO DEFENDANT:

18       PLEASE TAKE NOTICE that on, January 8, 2007, at 9:00 a.m., or as soon

19  thereafter as the matter may be heard in the Courtroom of the Hon. Elizabeth D.

20  Laporte, United States Magistrate Judge, located at Courtroom E, 15th Floor of the

21  United States District Court, 450 Golden Gate Avenue, San Francisco, California

22  94102, Plaintiff Nike, Inc. ("Nike" or "Plaintiff"), will and hereby does move the

23  Court for entry of default judgment against Defendant Felix Ose Osifo, an individual

24  and d/b/a Osifo Hip Hop Clothing ("Defendant"), for statutory damages in the sum

25  total of One Hundred Fifty Thousand Dollars ($150,000.00) and post-judgment

26  interest.  Nike also seeks entry of a permanent injunction prohibiting Defendant from

27  further infringement of Nike's trademarks.

28

    Nike v. Osifo, et al.: Notice and Motion for Default          - i -
    Judgment

By this Notice of Motion and Motion for Default Judgment, the Memorandum of Points and Authorities attached thereto, and the Declarations of Annie Wang, David W. Simpson and Erik Fernandez, and exhibits attached thereto, Nike requests that a default judgment be entered based on the following points:

1. Defendant is not an infant, incompetent person, in the military service or otherwise exempted under the Soldier's and Sailor's Civil Relief Act of 1940.

2. Defendant has not appeared in the action.

3. This Notice and Motion for Default Judgment, along with all supporting papers is being served on Defendant on November 15, 2007, by placing a true and correct copy thereof in an envelope to be immediately sealed thereafter addressed to Defendant at the same addresses where service of process was completed.

4. Nike elects statutory damages under the Lanham Act.

5. Nike is entitled to judgment against Defendant based on violation of 15 U.S.C. §§ 1051 *et seq.* Nike does not elect to pursue its claims for trademark dilution or unfair competition.

6. The principal amount of the judgment sought as against Defendant is statutory damages in the amount of One Hundred Fifty Thousand Dollars ($150,000.00), as set forth in the accompanying Memorandum of Points and Authorities, supporting declarations and exhibits, and as authorized by 15 U.S.C. §§ 1116-1117. Plaintiff also seeks post-judgment interest calculated at the statutory rate pursuant to 28 U.S.C. § 1961(a), and entry of a permanent injunction prohibiting Defendant from further infringing any of Nike's trademarks.

/ / /

/ / /

7. This motion is based on this Notice of Motion, Motion for Entry of Default Judgment and accompanying Memorandum of Points and Authorities, the Declarations, and exhibits attached thereto, the exhibits and evidence to be presented at the hearing hereon, the pleadings, records and papers on file herein and such other matters and evidence as may be presented at or before the hearing.

DATED:  November 15, 2007

J. Andrew Coombs, A Professional Corp.

By: _____
J. Andrew Coombs
Annie S. Wang
Attorneys for Plaintiff Nike, Inc.

# TABLE OF CONTENTS

**INTRODUCTION AND STATEMENT OF FACTS**     1

A.    Plaintiff Nike     1

B.    Defendant's Infringing Activities     3

C.    This Action     4

**ARGUMENT**     4

A.    Default Judgment Is Properly Entered Against Defendant     4
     1.    Nike's Complaint Sufficiently Charges Defendant With Trademark Counterfeiting     5
     2.    All of the Other Eitel Factors Have Been Met     8

B.    Nike Has Met the Procedural Requirements for Entry of a Default Judgment     10

C.    Nike Is Entitled to a Permanent Injunction     11

D.    Nike Is Entitled to Statutory Damages of $150,000.00 Based on Defendant's Willful Infringement of Its Trademarks     11
     1.    Defendant's Conduct Was Willful     11
     2.    Defendant Willfully Infringed Upon Nike's Trademarks     12
     3.    Nike Is Entitled to $25,000.00 For Each of Six Trademarks Based on Defendant's Willful Counterfeiting of Its Trademarks     12

E.    Nike Is Entitled to Interest on the Judgment     15

**CONCLUSION**     15

Declaration of Erik Fernandez     16

Declaration of David W. Simpson     20

Declaration of Annie Wang     23

# TABLE OF AUTHORITIES

## CASES

Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1454-55 (9th Cir. 1991)..........................6

AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-54 (9th Cir. 1979)..................6, 8

Carte Blanche (Singapore) Pte. v. Carte Blanche International, 888 F.2d 260, 269 (2nd Cir. 1989)..........................15

Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978) ..........................5

Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986)..........................4-5, 8-10

Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) ..........................5

Kloepping v. Fireman's Fund, 1996 U.S. Dist. LEXIS 1786 (N.D. Cal. 1996) ..........................5, 10

Levi Strauss & Co. v. Blue Bell, Inc., 778 F.2d 1352, 1354 (9th Cir. 1985)..........................5

Lindy Pen Co. v. Bic Pen Co., 984 F.2d 1400, 1406 (9th Cir. 1993)..........................12

M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1085 (9th Cir. 2005)..........................6-8

Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314 (1950)..........................9

Nishimatsu Construction Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975) ..........................5

State of Idaho Potato Commission v. G &T Terminal Packaging, Inc., 425 F.3d 708, 721 (9th Cir 2005)..........................14

TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987) ..........................1, 9

Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992)..........................6

Vigil v. Walt Disney Co., 1995 U.S. Dist. LEXIS 15560, at *5 (N.D. Cal. Oct. 16, 1995)..........................5

## STATUTES

15 U.S.C. § 1051. ..........................2, 5

15 U.S.C. § 1059 ..........................4

15 U.S.C. § 1065 ..........................2

15 U.S.C. § 1114 ..........................5

15 U.S.C. § 1115(a)..........................5

1

15 U.S.C. § 1116(d) ...........................................................................13-14

15 U.S.C. § 1117(a)(c)...................................................................1, 8, 11, 13

15 U.S.C. § 1125    .......................................................................................3

28 U.S.C. § 1961(a).................................................................................15

Fed. R. Civ. P. 8(d) ..............................................................................5, 9

Fed. R. Civ. P. 54(c)................................................................................11

Fed. R. Civ. P. 55(a)(b).......................................................................... 10, 11

Cal. Bus. & Prof. Code, § 17200.................................................................4

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION AND STATEMENT OF FACTS

Defendant Felix Ose Osifo, an individual and d/b/a Osifo Hip Hop Clothing ("Defendant") is involved in the manufacture, purchase, distribution, offering for sale and/or sale of counterfeit footwear to the general public of illegitimate goods infringing Plaintiff Nike, Inc.'s ("Nike" or "Plaintiff") trademarks. In flagrant disregard for the procedures of this Court, Defendant has failed to appear in response to valid and effective service of process upon them.

Defendant's default has deprived Nike of the ability to prove up a specific amount of actual damages. Accordingly, Nike relies on the statutory damages provisions contained in the Lanham Act for trademark counterfeiting. Although Defendant's conduct is such as to warrant imposition of damages for willful counterfeiting (of up to $1,000,000 per trademark counterfeited), Nike limits its request to $25,000.00 for each of just six of the trademarks for which it has attached evidence of infringement, Declaration of Erik Fernandez ("Fernandez Decl.") at ¶ 6, Ex. D.

Now, Nike seeks judgment, including an award of statutory damages in the amount of $150,000.00 pursuant to Section 1117(c) of the Lanham Act. Nike also seeks post-judgment interest and entry of a permanent injunction prohibiting Defendant and his representatives from further infringement of Nike's trademarks.

### A.    Plaintiff Nike

Nike is a corporation duly organized and existing under the laws of the State of Oregon, having its principal place of business in Beaverton, Oregon. Complaint ("Compl.) at ¶ 3.[1]

---

[1] As a result of Defendant's default, the allegations of the Complaint are deemed admitted. TeleVideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir. 1987) (factual allegations of the Complaint, except those relating to the amount of damages are taken as true). See also the supporting declarations and exhibits hereto.

Nike is engaged in the manufacture, design and sale of footwear, apparel, and related accessories. Id. at ¶ 6. Products manufactured and sold by Nike bear the NIKE trademark, or an arbitrary and distinctive trademark which has come to be known as the Swoosh Design trademark, or a composite trademark consisting of the word NIKE and the Swoosh Design. Id. Nike uses these trademarks on shoes and apparel as trademarks of Nike's high quality products. Id. Nike sells in excess of $4,500,000,000 a year in merchandise bearing its distinctive trademarks. Id.

All products described above are sold with one or more of the Nike trademarks. Compl. at ¶ 7. Nike adopted and used the NIKE and Swoosh Design trademarks in 1971. Id. Nike registered the NIKE trademark in block letters on May 8, 1984, Registration No. 1,277,066 in Class 25 for apparel. Id. Nike registered the Swoosh Design on July 3, 1984, Registration No. 1,284,385 for apparel in Class 25. Id. Nike registered the composite mark of Nike and the Swoosh Design trademark on May 10, 1983, for apparel in Class 25. Id. And, more recently, Nike has registered the NIKE AIR trademark, Registration No. 1,591,006, for apparel in Class 25. Id.

Additionally, Nike obtained registrations for word marks incorporating the word "air", including AIR JORDAN, AIR MAX and AIR TRAINER. Id. at ¶ 8. These are some, but by no means all, of Nike's federal trademark registrations. Id. Each of The Nike Trademarks have been registered with the United States Patent and Trademark Office pursuant to the Lanham Act (15 U.S.C. § 1051). Declaration of David W. Simpson ("Simpson Decl.") at ¶ 4, Ex. E; Declaration of Annie Wang ("Wang Decl.") at ¶ 8. The trademarks identified in Exhibit "E" to the Simpson Decl. are collectively referred to herein as the "Nike Trademarks".

All of the Nike Trademarks are current and in full force and effect. Many of the marks have become incontestable pursuant to 15 U.S.C. § 1065. Compl. at ¶ 8.

Additionally, all of the Nike Trademarks qualify as famous marks pursuant to 15 U.S.C. § 1125. Id.

The Nike Trademarks are distinctive when applied to high quality apparel, footwear and related merchandise, and signify to the purchaser that the products come from Nike and are manufactured, whether by Nike itself, or its licensees, to the highest quality standard. Id. at ¶ 9. Nike's products have been widely accepted by the public and are enormously popular, as demonstrated by billions of dollars in sales each year. Id.

This enormous popularity is not without cost, as evidenced by the increasing number of counterfeiters in the United States and around the world. Id. at ¶ 10. Indeed, it is a modern irony that companies measure success by the extent of their counterfeiting problem. Id.

## B.    Defendant's Infringing Activities

Defendant is an individual residing in the State of California. Compl. at ¶ 4. Defendant is a seller of counterfeit Nike branded shoes through a retail outlet located in San Jose, California. Id. Defendant does business in this judicial district through offers and sales of counterfeit shoes within this district. Id. at ¶ 1.

Defendant offered for sale a number of different styles of shoes bearing Nike trademarks. Fernandez Decl. at ¶¶ 4-6. The shoes sold by Defendant were also examined by Nike and determined to be counterfeit as the labeling and other features of the shoes were incorrect or inconsistent with authentic product. Simpson Decl. at ¶ 5.

By engaging in this unauthorized conduct, Defendant has acted in willful disregard of laws protecting Nike's Trademarks. Through such active manufacturing, purchasing, distributing, offering of sale and selling such unlicensed and counterfeit footwear, Nike is irreparably damaged through

consumer confusion, dilution and tarnishment of its valuable trademarks. Compl. at ¶ 1.

## C.    **This Action**

Nike filed this action on or about September 5, 2007. Nike's Complaint alleges violation of 15 U.S.C. §§ 1059, *et seq.*, California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200, *et seq.* and California Business and Professions Code, § 14330 (trademark infringement, dilution and unfair competition).

The Summons and Complaint were served on Defendant on or about September 26, 2007. Wang Decl. at ¶ 2. Nike filed the Proof of Service with the Court on or about October 18, 2007, and the Clerk entered Defendant's default on or about October 29, 2007. Id. at ¶ 5. The Defendant has not filed a responsive pleading or otherwise appeared in this action. Id. at ¶ 4.

## ARGUMENT

## A.    **Default Judgment Is Properly Entered Against Defendant**

In Eitel v. McCool, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit outlined the following factors to determine whether to grant default judgment:

(1) the substantive merits of plaintiff's complaint;

(2) the complaint's sufficiency;

(3) the amount of money at stake;

(4) the possibility of prejudice to plaintiff if relief is denied;

(5) the possibility of dispute as to any material facts;

(6) whether default resulted from excusable neglect; and

(7) the policy of the Federal Rules favoring decisions on the merits.

Id. at 1470-72.

Nike meets each element.

1

2

### 1.    Nike's Complaint Sufficiently Charges Defendant with Trademark Counterfeiting

3

4

The first two <u>Eitel</u> factors, involving the substantive merits of the claim and

5

the sufficiency of the complaint, require that Plaintiff's allegations "state a claim

6

upon which [it] may recover." <u>Kloepping v. Fireman's Fund</u>, 1996 U.S. Dist.

7

LEXIS 1786 at *5 (N.D. Cal. 1996), *citing* <u>Danning v. Lavine</u>, 572 F.2d 1386,

8

1388 (9th Cir. 1978). Upon a defendant's default, the factual allegations of the

9

complaint, other than those relating to the amount of damages sustained, are

10

deemed admitted. Fed. R. Civ. P. 8(d); <u>Geddes v. United Financial Group</u>, 559

11

F.2d 557, 560 (9th Cir. 1977); <u>Nishimatsu Construction Co., Ltd. v. Houston Nat'l</u>

<u>Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975).

12

13

The complaint sufficiently pleads Nike's claim for trademark counterfeiting

14

pursuant to 15 U.S.C. §§ 1051, *et seq*. Nike owns registered trademarks and the

15

Defendant distributed footwear bearing identical copies of its trademarks, all

16

without Nike's authorization. Compl. at ¶¶ 6-57; Fernandez Decl. at ¶¶ 4-6, Ex.s

17

A-D. Defendant did so intentionally and his product was likely to cause confusion

18

or mistake to the public regarding the affiliation, sponsorship, endorsement or

19

approval of the counterfeit product. Compl. at ¶¶ 6-57. These allegations state

20

claims for trademark counterfeiting upon which Nike may recover.

21

To succeed on a claim under the Lanham Act, a plaintiff must establish that

22

its mark is valid and has been infringed. 15 U.S.C. § 1114. Registration of a mark

23

on the principal register is "prima facie evidence... of the registrant's ownership of

24

the mark, and of the registrant's exclusive right to use the registered mark in

25

commerce..." 15 U.S.C. § 1115(a); <u>Vigil v. Walt Disney Co.</u>, 1995 U.S. Dist.

26

LEXIS 15560, at *5 (N.D. Cal. Oct. 16, 1995); <u>Levi Strauss & Co. v. Blue Bell,</u>

27

<u>Inc.</u>, 778 F.2d 1352, 1354 (9th Cir. 1985) (registration by the trademark holder

28

constitutes *prima facie* evidence of a protected interest with respect to the good

specified in the registration).  Relevant registrations and their present validity and effectiveness are alleged in the Complaint and herein.  Compl. at ¶¶ 6-10; Simpson Decl. at ¶ 4, Ex. E; Wang Decl. at ¶ 8.

The test for infringement of a federally registered trademark under the Trademark Act of 1946 ("Lanham Act") is whether the alleged infringing act creates a likelihood of confusion.  Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769  (1992); Academy of Motion Picture Arts & Sciences v. Creative House Promotions, Inc., 944 F.2d 1446, 1454-55 (9th Cir. 1991). In determining likelihood of confusion, the Ninth Circuit has adopted the Sleekcraft test, balancing the following factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care consumers are likely to exercise in purchasing them; (7) intent of the defendant in selecting the mark; and (8) likelihood that the parties will expand their product lines.  AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-54 (9th Cir. 1979).  In addition, when the alleged infringer knowingly adopts a mark similar to another's, some courts presume that the public will be deceived.  M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1085 (9th Cir. 2005).  These factors all demonstrate Defendant's infringement of Nike's trademarks:

1.    Strength of the Trademark:  Nike's marks are exceptionally strong as they identify Nike's high quality products such that they have acquired secondary and distinctive meaning in the minds of consumers throughout the world as a direct result of Nike's longstanding use, sales, advertising and marketing.  Compl. at ¶ 28.

2.    Proximity of goods:  The likelihood of confusion is heightened where as here, the goods at issue are "related or complementary."  M2 Software, Inc., 421 F.3d at 1082.  Nike has alleged that it lawfully advertises and sells products, including apparel, footwear, watches, jewelry and related merchandise, and that

Defendant has, with actual and constructive notice of Nike's federal registration rights, and long after Nike established its rights in the Nike Trademarks, adopted and used the Nike Trademarks in conjunction with the manufacture, purchase, distribution, offer of sale and sale of footwear in the State of California and in interstate commerce. Compl. at ¶¶ 15-16. Defendant's products include footwear – a class of goods for which Nike has numerous trademark registrations.

3.   <u>Similarity of the Marks</u>:  Defendant has sought to capitalize on Nike's strong marks by copying them with no variation from their authorized versions with the intent to palm off such goods as those of Nike.  Defendant has caused to be imported, distributed, offered for sale and sold footwear bearing one or more of the Nike Trademarks without the authorization of Nike.  Compl. at ¶¶ 17, 45.

4.   <u>Evidence of Actual Confusion</u>:  Purchases made by third-parties of Defendant's unauthorized, counterfeit product evidences actual confusion as to their source and origin.  Compl. at ¶¶ 17-19.

5.   <u>Marketing Channels Used</u>:  Defendant uses a retail outlet to sell his infringing goods.  Compl. at ¶¶ 1, 4.  Nike also uses retail outlets as a channel through which to market legitimate product – through a number of Nike operated stores and third party retailers, a matter of which the Court can, if necessary, take judicial notice.  Nike has a substantial retail presence, resulting in significant overlap in advertising markets, which increases the likelihood of confusion.  <u>M2 Software, Inc.</u>, 421 F.3d at 1083.

6.   <u>Type of Goods and Care Likely to be Exercised by the Purchaser</u>:  Defendant has duplicated Nike's products so that consumers cannot differentiate between illegal and legitimate products at the point of purchase and tend to believe that Defendant's footwear and related merchandise are authorized, sponsored, approved or associated with Nike.  Compl. at ¶ 29.  Modern consumers, who are aware of the sensitivity of quality footwear look to Nike's marks for assurance of

Nike's developed and maintained goodwill and reputation for high quality
products.

7.    Defendant's Intent in Selecting the Mark:  Defendant's intention to
confuse the public is self-evident.  When a person knowingly adopts a mark
identical to another's mark, the Court may infer that person's intent to confuse.
M2 Software, 421 F.3d at 1085 (willful use creates a presumption of public
deception).

8.    Likelihood of Expansion of Product Lines:  Nike is already using its
trademarks in the class of goods and services exploited by Defendant.
Furthermore, Defendant's intention to expand its product line is irrelevant as
Defendant is operating an illegitimate business practice whose existing product
line consists of counterfeit goods.

Thus, Nike is a valid trademark holder and has sufficiently alleged in its
pleadings a likelihood of confusion under the Sleekcraft factors for its trademark
infringement claim.

**2.    All of the Other Eitel Factors Have Been Met**

a.    Amount at Stake:  Under the third Eitel factor, the Court must
consider the amount of money at stake.  Eitel, 782 F.2d at 1471-72.  In the
Complaint, Nike prays for injunctive relief, statutory damages of up to One Million
Dollars ($1,000,000) for each of the Nike Trademarks infringed upon by the
Defendant if Defendant's acts are found to be willful, and attorneys' fees.  Compl.
pp. 12-15; Prayer.  By this motion, Plaintiff seeks permanent injunctive relief,
$150,000.00 in statutory damages as provided for in 15 U.S.C. § 1117 (c) and post-
judgment interest.

b.    Possibility of Prejudice:  The fourth Eitel factor considers whether
Nike will suffer prejudice if default judgment is not entered.  Eitel, 782 F.2d at
1471-72.  In light of the fact Defendant failed to answer and declined to appear in

response to Nike's Complaint, and defaults were entered, thereby admitting the averments of the Complaint, Nike will likely suffer prejudice if default judgment is not entered.

c. <u>Possibility of Dispute</u>: The fifth <u>Eitel</u> factor requires the Court to consider the possibility of dispute as to any material facts in the case. Again, upon entry of default, all well-pleaded facts in the Complaint are taken as true except those relating to damages. *See* <u>TeleVideo Systems, Inc. v. Heidenthal</u>, 826 F.2d 915, 917 (9th Cir. 1987); Fed. R. Civ. P. 8(d). Here, Nike filed a well-pleaded Complaint alleging the facts necessary to establish all of its claims. As Nike's factual allegations are presumed true, no genuine dispute exists as to any material facts.

d. <u>Possibility of Excusable Neglect</u>: Under the sixth <u>Eitel</u> factor, the Court considers the possibility that Defendant's default resulted from excusable neglect. Due process requires that interested parties be given notice of the pendency of the action and be afforded an opportunity to present its objections before a final judgment is rendered. <u>Mullane v. Central Hanover Trust Co.</u>, 339 U.S. 306, 314 (1950). Defendant was served the Summons and Complaint and though Defendant initially contacted Plaintiff's counsel, he has since become non-responsive. Wang Decl. at ¶¶ 2-3. Defendant has not filed a responsive pleading, or otherwise appeared in this action. <u>Id.</u> at ¶ 4. Defendant has had ample time to try to resolve this matter, but has elected not to appear. Defendant's voluntary decision to allow default to be entered contradicts any argument for excusable neglect.

The facts of this case are dissimilar from those in <u>Eitel</u>, in which the defendant's failure to answer constituted excusable neglect because the defendant believed the litigation was over, due to a final settlement agreement that subsequently dissolved. The defendant in <u>Eitel</u>, soon thereafter, filed an answer

have been met, as set forth in Nike's Notice of Motion for Default Judgment, further supporting the appropriateness of Nike's request.

Nike has complied with Fed. R. Civ. P. 54(c) and 55. In the pending action, Nike served the Defendant on or about September 26, 2007. Defendant failed to respond to the Complaint. Further, Defendant is not a minor, incompetent lacking adequate representation, in the military, or otherwise exempt under the Soldiers' and Sailors' Civil Relief Act of 1940. Nike does not request relief that differs from or exceeds that prayed for in the Complaint.

**C.    Nike Is Entitled to a Permanent Injunction**

Nike has alleged in its Complaint, and has presented specific evidence, that Defendant has infringed its trademarks by, *inter alia*, willfully and knowingly manufacturing, distributing, offering for sale and/or selling counterfeit shoes featuring the Nike Trademarks. The Complaint further alleges that unless enjoined, said infringements will continue with irreparable harm and damage to Nike. Compl. at ¶ 21.

**D.    Nike Is Entitled to Statutory Damages of $150,000.00 Based on Defendant's Willful Infringement of Its Trademarks**

Section 1117 of the Lanham Act allows a plaintiff to elect either statutory damages or actual damages for trademark infringement. 15 U.S.C. § 1117. Nike elects statutory damages. Since Defendant acted willfully, Nike is entitled to increased statutory damages awards of up to One Million Dollars per counterfeit mark per type of goods or services sold, offered for sale, or distributed. 17 U.S.C. § 1117(c)(2). Thus, Nike is seeking a reasonable award under the Lanham Act of One Hundred Fifty Thousand Dollars ($150,000.00) for the willful infringement of its trademarks by the Defendant.

**1.    Defendant's Conduct Was Willful**

Defendant has not elected to dispute any of Nike's allegations in the

and counterclaim, even though it was beyond the 20-day period. Eitel, 782 F.2d at 1472. The Defendant in the present case have failed to act despite having all opportunity to do so, with full knowledge that a lawsuit was filed against him, and that it was his responsibility to respond.

e.    Policy for Deciding on the Merits:  The seventh Eitel factor takes into account the preference of the Federal Rules for deciding cases on the merits. Eitel, 728 F.2d at 1472. However, "this preference, standing alone, is not dispositive." Kloepping v. Fireman's Fund, supra, 1996 U.S. Dist. LEXIS 1786 at *10. "While the Federal Rules favor decisions on the merits, they also allow for the termination of cases before the court can reach the merits....[t]hus, the preference to decide cases on the merits does not preclude a court from granting "default judgment." Id. Under Fed. R. Civ. P. 55 (a), default judgments are allowed. Here, Defendant failed to answer Nike's Complaint or to otherwise appear in the action. Allowing Defendant, who failed to defend this action, to proceed to trial would greatly prejudice Nike. Judgment against Defendant is proper at this time.

**B.    Nike Has Met The Procedural Requirements for Entry of a Default Judgment**

Fed. R. Civ. P. 55(b) provides for a court-ordered default judgment following entry of default by the court clerk under Rule 55(a). Kloepping v. Fireman's Fund, supra, 1996 U.S. Dist. LEXIS 1786 at *3-4. For judgment to enter, Plaintiff must show:  (1) when and against which party default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is adequately represented; (4) that the Soldiers' and Sailors' Civil Relief Act of 1940 does not apply; and (5) that notice of the application has been served on the defaulting party, if required. Fed. R. Civ. P. 55(b)(2). All of these requirements

Complaint. Moreover, the limited record that Nike is in a position to adduce (because it was denied an opportunity to conduct discovery as a result of Defendant's default), provides ample evidence of Defendant's willfulness.

Willful infringement carries a connotation of deliberate intent to deceive. Courts generally apply forceful labels such as "deliberate," "false," "misleading," or "fraudulent" to conduct that meets this standard. Lindy Pen Co. v. Bic Pen Co., 984 F.2d 1400, 1406 (9th Cir. 1993). Here, Nike has alleged in its Complaint, Defendant's willfulness. Compl. at ¶¶ 1, 23, 30, 41, 47, 53. Additionally, Defendant featured an extensive selection of Nike knock-off products prominently in his store despite their counterfeit nature, maintained a substantial inventory of counterfeit shoes, and fled the scene when being served with a cease and desist letter on behalf of Nike. Fernandez Decl. at ¶¶ 4-12.

## 2. Defendant Willfully Infringed Upon Nike's Trademarks

Nike's ownership of the Nike Trademarks cannot be disputed. Simpson Decl. at ¶ 4, Ex. E; Wang Decl. at ¶ 8. In any event, Nike's ownership of these trademarks is uncontested as a result of Defendant's default. The Nike Trademarks were duplicated in the Defendant's counterfeit merchandise. Compl. at ¶ 29; Fernandez Decl. at ¶¶ 4-6. This evidence indicates Defendant's infringement of Nike's trademarks by systematically selling unauthorized product incorporating the Nike Trademarks. Further, Nike is seeking to recover from only a partial trademark list from that alleged in the Complaint and from those appearing on Defendant's counterfeit merchandise. Thus, Nike is entitled to the reasonable award requested.

## 3. Nike Is Entitled to $25,000.00 for Each of Six Trademarks Based on Defendant's Willful Counterfeiting of Its Trademarks

Nike seeks Twenty-Five Thousand Dollars ($25,000.00) per trademark for a total of One Hundred Fifty Thousand Dollars ($150,000.00) for Defendant's

infringement despite there existing cause for recovery based on more trademarks.[2] This is well within the statutory limits provided for pursuant to the Lanham Act and within the limits applicable to acts of innocent infringement.  This amount is properly awarded given (i) Defendant's willful conduct; and (ii) Defendant's blithe disregard for the process of this Court.

Section 1117(c) provides, in pertinent part:

> In a case involving the use of a counterfeit mark (as defined in section 1116(d) of title 15) in connection with the sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subjection (a) of this section, an award of statutory damages for any such use in connection with the sale, or distribution of goods or services in the amount of-
>
> > (1) not less than $500 or more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
> >
> > (2)    if the court finds that the use of the counterfeit mark was willful, not more than $1,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c)(1)-(2).

In determining such an award, the Plaintiff must establish that:

_____

[2] Despite Defendant's lack of response to Plaintiff's enforcement of its rights and all allegations in the Complaint deemed true based on Defendant's default, Exhibit A to the Complaint lists a number of valid trademarks and here, Plaintiff is seeking recovery based on only six, further evidencing the reasonableness of Plaintiff's statutory damages request.

(1) Defendants intentionally used a counterfeit mark[3] in commerce- defining "counterfeit mark" as, an identical, non-genuine mark, in use by Plaintiff and registered in the same class of goods complained of without Plaintiff's prior authorization;

(2) Knowing the mark was counterfeit;

(3) In connection with the sale, offering for sale, or distribution of goods; and

(4) Its use was likely to confuse or deceive.

State of Idaho Potato Commission v. G &T Terminal Packaging, Inc., 425 F.3d 708, 721 (9th Cir. 2005).

As complained of in the Complaint, Defendant's use constituted counterfeiting as he used identical, non-genuine marks, of marks already in use and registered in the proper class of goods by Nike, on goods that were likely to cause confusion or deception to the consuming public with knowledge. Compl. ¶¶ 1, 17-19, 30, 45-47.

If this Court were to award Nike only minimal damages, then Defendant in this action, as well as future defendants, would be encouraged to ignore any legal actions taken by Nike against them. The granting of the requested statutory damage award at this time will act to deter Defendant (and others) from violating Nike's trademarks and otherwise violating Nike's rights with relative impunity.

Defendant has chosen to permit the entry of his default. Because of Defendant's default, Nike has been left with no effective choice but to seek an award of statutory damages. Based upon a portion of Defendant's systematic, willful and felonious acts, Nike is entitled to an award of statutory damages of One

---

[3] Section 15 U.S.C. 1117 (c) refers to the definition in 15 U.S.C. § 1116 (d)(1)(B) as one that "is registered on the principal register in the United States Patent and Trademark Office for such foods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered."

Hundred Fifty Thousand Dollars ($150,000.00) against Defendant.

**E.    Nike Is Entitled to Interest on the Judgment**

Nike is entitled to post-judgment interest. "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Post-judgment interest shall be calculated pursuant to the statutory rate. Id.; Carte Blanche (Singapore) Pte. v. Carte Blanche International, 888 F.2d 260, 269 (2nd Cir. 1989).

<h2 style="text-align:center">CONCLUSION</h2>

For the foregoing reasons, Nike respectfully requests that the Magistrate Judge recommend Nike be awarded permanent injunctive relief enjoining Defendant from further violation of its rights. In addition, Nike requests Judgment in Nike's favor in the amount of One Hundred Fifty Thousand Dollars ($150,000.00) in Lanham Act statutory damages and post-judgment interest in substantially the form of the submitted proposed orders.

DATED:  November 15, 2007            J. Andrew Coombs, A Professional Corp.

By: _____
     J. Andrew Coombs
     Annie Wang
     Attorneys for Plaintiff Nike, Inc.

### DECLARATION OF ERIK FERNANDEZ

I, ERIK FERNANDEZ, declare as follows:

1.     I am an investigator employed with the licensed investigative agency Brand Security Corporation ("Brand Security"). I submit this declaration in support of Plaintiff, Nike, Inc.'s Motion for Default Judgment. Except as otherwise stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows.

2.     I have been employed by Brand Security and, prior to Brand Security by IPEC, Inc. ("IPEC") which is also a licensed private investigative firm in Los Angeles, since 2001. IPEC's practice also specialized in intellectual property investigations. I have over 200 hours of training and on the job experience in identifying and differentiating various trademarks. This training was given by: Heather Holdridge, President of Brand Security and former president of IPEC; J. Andrew Coombs, former Executive Counsel for The Walt Disney Company; Hap Wheale, Security Director for Levi Strauss & Co.; David Simpson of Nike, Inc.; and Erik Levin - associate counsel for NBA properties.

3.     I have worked on about 200 cases in the past year involving the identification of authentic and counterfeit trademarked, copyrighted and/or patented goods. I have been responsible for providing evidence in support of numerous federal Temporary Restraining Orders and I have assisted in the execution of numerous criminal search warrants and civil seizure orders involving the sale of infringing and counterfeit merchandise. Brand Security is frequently retained by companies to investigate potential theft and/or counterfeiting of their registered trademarks, copyrights and patents. This formal and informal training has given me the experience in identifying and differentiating between goods bearing genuine trademarks, copyrights and other proprietary rights, and infringements and counterfeits.

4.    On or about July 11, 2007, I traveled to a retail urban clothing store located at 324 East Santa Clara Street in San Jose, CA 95133. The store is a green, single-story commercial building with green trim. The complex consists of multiple tenants, each with a different address. The name of the business, "OSIFO HIP HOP CLOTHING" is depicted over the front entrance in blue letters. The address is depicted over the front glass entrance in black numbers. A true and correct copy of a photo of the exterior of OSIFO HIP HOP CLOTHING is attached hereto as Exhibit A.

5.    Upon entry into OSIFO HIP HOP CLOTHING, I observed a retail store with racks of clothing displayed throughout. I also observed several boxes of counterfeit Nike shoes. It appeared to me that a sample shoe was sitting on top of each box to identify the style contained in each box. Attached hereto as Exhibit B are true and correct copies of photos of the counterfeit shoes on display inside OSIFO HIP HOP CLOTHING.

6.    I observed approximately 70 pairs of counterfeit Nike Air Force 1 shoes and 60 pairs of counterfeit Air Jordan shoes on display for sale. I then selected one pair of black/yellow Nike Air Force 1 shoes and one pair of black/orange Air Jordan shoes and requested these shoes from an African American male who was later identified as Mr. Felix Ose Osifo ("Mr. Osifo"), the owner of the store. Also present was a Hispanic female. I then purchased the shoes for a total of $108.25 by credit card and obtained a receipt. Attached hereto as Exhibit C is a true and correct copy of a photograph of the receipt. Attached hereto as Exhibit D are true and correct copies of photos of the shoes and their packaging purchased from OSIFO HIP HOP CLOTHING.

7.    Immediately after leaving OSIFO HIP HOP CLOTHING, I confirmed with Nike, Inc. that the shoes I just purchased from OSIFO HIP HOP CLOTHING were counterfeit.

8.    After confirmation that the shoes were counterfeit, I returned to OSIFO HIP HOP CLOTHING, identified myself, and tried to serve a cease and desist letter.  At this point, Mr. Osifo started screaming and stated the following:

- Get out!
- You are trying to rob me.
- Get out!
- I don't care get out.
- No, get out you can take your papers and get out.
- I'm calling the police.

9.    At that time, Mr. Osifo grabbed my clipboard and began to walk out the front door with it.  I attempted to get my clipboard back but Mr. Osifo grabbed me and pushed me out of the store.  Mr. Osifo then closed the door and had the Hispanic female remain inside the store.  Meanwhile, Mr. Osifo ran and hid from me.  I then contacted the San Jose Police Department for assistance.

10.    After a few minutes, the Hispanic female was observed talking on her cellular phone and then began locking all of the doors.  She then fled the scene as San Jose police officers arrived at the store.  After explaining the situation to the police officers, they began searching for Mr. Osifo.  As we walked behind the building, Mr. Osifo was observed peeking his head from an apartment building behind the store and then ran from the police when he saw them.  The police officers located Mr. Osifo in his apartment at 24 South 7th Street in San Jose, CA 95133.

11.    The police officers questioned Mr. Osifo and he stated the following in my presence:

- I did not know who they were.
- They came in yelling Nike Police, Nike Police.
- I thought that they were going to rob me.
- I was really scared so I left my employee in the store while I got away.

- I ran because I was scared.
- I did push him.
- I never put my hands on him.
- I told him let's go outside and talk about it.
- I'm not lying.
- I'm just really nervous.
- I would like to talk with my lawyer first.
- No, I don't want to turn over anything until I figure out if they are legit.
- Oh, you did.
- Well, I still want to talk with a lawyer first.
- They can inventory the shoes but I don't have any keys to get in.
- My employee left with the keys.
- Yes, this is my house.
- I only have keys to my house.

12.    We then served Mr. Osifo with a cease and desist letter but Mr. Osifo refused to turn over the shoes.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _14th_ day of November, 2007, at Glendale, California.

~~ERIK FERNANDEZ~~

### DECLARATION OF DAVID W. SIMPSON

I, David W. Simpson, declare the following:

1.     I am the Director of Security for Nike, Inc. ("Nike"). I have been employed in this capacity for 14 years. As a part of my duties as Director of Security, I am charged with the directing of anti-counterfeiting enforcement activity for footwear, apparel and accessories. In that capacity I regularly review the Nike product line so that I am familiar with legitimate Nike products. Except as otherwise stated, I have personal knowledge of the facts set forth herein, and, if called as a witness, I could and would competently testify under oath as follows.

2.     Nike, an Oregon Corporation having its principal offices in Beaverton, Oregon, United States of America, designs, markets, and sells footwear, apparel, and related accessories. In 1971, BRS, Inc., an Oregon corporation and the predecessor of Nike, adopted and commenced use of the word NIKE, an arbitrary distinctive emblem which has come to be known as the Swoosh Design, and a composite mark consisting of the word NIKE and the Swoosh Design as trademarks for shoes and apparel. The NIKE, NIKE AIR, NIKE and Swoosh Design, and the Swoosh Design trademarks were subsequently developed, and adopted and used by NIKE. In addition to the aforementioned Designs what has become known as the Jump Man Design, filed as Basketball Player Design, was also developed by Nike.

3.     Nike has duly registered and renewed the following trademarks with the United States Patent and trademark Office:

| Trademark | Registration Number | Registration Date |
|---|---|---|
| NIKE | 1,277,066 | May 8, 1984 |
| SWOOSH Design | 1,284,385 | July 3, 1984 |
| NIKE and SWOOSH Design | 1,237,469 | May 10, 1983 |
| SWOOSH Design | 977,190 | January 22, 1974 |
| NIKE AIR | 1,571,066 | December 12, 1989 |

| AIR JORDAN Design | 1,742,019 | December 22, 1992 (Class 18 and 25) |
|---|---|---|
| JUST DO IT | 1,875,307 | January 24, 1995 |
| SWOOSH | 1,200,529 | July 6, 1982 |
| NIKE | 1,214,930 | November 2, 1982 |
| NIKE AIR w/SWOOSH device | 1,284,386 | July 3, 1984 |
| NIKE AIR | 1,307,123 | November 27, 1984 |
| SWOOSH device | 1,323,343 | March 5, 1985 |
| NIKE w/SWOOSH device | 1,325,938 | March 19, 1985 |
| AIR JORDAN | 1,370,283 | November 12, 1985 |
| AIR MAX | 1,508,348 | October 11, 1988 |
| Jump Man device | 1,558,100 | September 26, 1989 |
| NIKE SHOX | 2,970,902 | July 19, 2005 |

4.     True and correct copies of all of the aforementioned trademark registrations are collectively attached hereto as Exhibit E.

5.     I examined the Nike Air Force 1 shoes and Air Jordan shoes which were purchased by Erik Fernandez of Brand Security from OSIFO HIP HOP CLOTHING. The Nike Air Force 1 shoes are black and yellow "Air Force 1" type shoes with copies of the SWOOSH, NIKE AIR w/SWOOSH, and NIKE w/SWOOSH device trademarks. The packaging also contained copies of the NIKE, SWOOSH, NIKE AIR w/SWOOSH, and NIKE w/SWOOSH device trademarks. Following examination, it was determined the shoes are counterfeit as the labeling was incorrect, and the shoes lacked airbags, a feature included with authorized shoes of this shoe style. The Air Jordan shoes are black and orange "Air Jordan" type shoes with copies of the Jump Man device trademark. The packaging also contained copies of the AIR JORDAN, NIKE AIR w/SWOOSH, and SWOOSH device trademarks. Following examination, it was determined the shoes are counterfeit as the labeling was incorrect and the shoes lacked airbags consistent with authentic product.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9 day of November, 2007 at Beaverton, Oregon.

DAVID W. SIMPSON

# DECLARATION OF ANNIE WANG

I, ANNIE WANG, declare as follows:

1.     I am an attorney at law, duly admitted to practice before the Courts of the State of California and the United States District Court for the Central District of California.  I am an attorney for Plaintiff Nike, Inc. ("Nike" or "Plaintiff") in an action styled <u>Nike, Inc. v. Osifo, et al</u>.  I make this Declaration in support of Plaintiff's Motion for Entry of Default Judgment.  Except as otherwise expressly stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows.

2.     I am informed and believe that on or about September 26, 2007, Plaintiff served the Summons and Complaint on Defendant Felix Ose Osifo, an individual and d/b/a Osifo Hip Hop Clothing ("Defendant").

3.     I am informed and believe that on or about October 11, 2007, Plaintiff received correspondence from Defendant.  I am informed and believe that Defendant has not contacted my office since his initial correspondence despite follow up by Plaintiff.

4.     To my knowledge, Defendant has not filed a responsive pleading, or otherwise appeared in this action.

5.     I am informed and believe that on or about October 18, 2007, my office caused to be filed the proof of service for Defendant.  On or about October 29, 2007, the Clerk entered Defendant's default.

6.     I am informed and believe that Defendant is not an infant or incompetent person.

7.     I am informed and believe that the Defendant is not currently serving in the military.

8.      I request, pursuant to Federal Rules of Evidence, Rule 201(b) that the Court take judicial notice of copies of the Nike registrations mentioned in the Declaration of David W. Simpson which have been attached hereto as Exhibit E.

9.      I am informed and believe (and as reflected on proofs of service attached to the moving papers), that the Notice of Motion and supporting papers were served on the Defendant where service of process was effected, on November 15, 2007.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 15th day of November, 2007, in Glendale, California.

_____
ANNIE WANG

## PROOF OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Los Angeles, and not a party to the above-entitled cause. I am employed by a member of the Bar of the United States District Court of California. My business address is 517 E. Wilson Ave., Suite 202, Glendale, California 91206.

On November 15, 2007, I served on the interested parties in this action with the following:

- NOTICE AND MOTION FOR ENTRY OF DEFAULT JUDGMENT; DECLARATIONS AND EXHIBITS IN SUPPORT THEREOF
  - [PROPOSED] ORDER
- [PROPOSED] JUDGMENT PURSUANT TO ENTRY OF DEFAULT

for the following civil action:

<u>Nike, Inc. v. Felix Ose Osifo, et al.</u>

by placing a true copy thereof in an envelope to be immediately sealed thereafter. I am readily familiar with the office's practice of collecting and processing correspondence for mailing. Under that practice it would be deposited with the United States Postal Service on the same day with postage thereon fully prepaid at Glendale, California in the ordinary course of business. I am aware that on motion of the party served, service presumed invalid if postal cancellation date or postage meter is more than one day after date of deposit for mailing in affidavit.

| Felix Ose Osifo d/b/a Osifo Hip Hop Clothing 324 E. Santa Clara St. San Jose, California 95113 | |
|---|---|

Place of Mailing: Glendale, California
Executed on November 15, 2007, at Glendale, California

_____
Katrina Bartolome