# EXHIBIT A

# DECLARATION OF ERIK FERNANDEZ

I, ERIK FERNANDEZ, declare as follows:

1. I am an investigator employed with the licensed investigative agency Brand Security Corporation ("Brand Security"). I submit this declaration in support of Plaintiff, Nike, Inc.'s Motion for Default Judgment. Except as otherwise stated to the contrary, I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify as follows.

2. I have been employed by Brand Security and, prior to Brand Security by IPEC, Inc. ("IPEC") which is also a licensed private investigative firm in Los Angeles, since 2001. IPEC's practice also specialized in intellectual property investigations. I have over 200 hours of training and on the job experience in identifying and differentiating various trademarks. This training was given by: Heather Holdridge, President of Brand Security and former president of IPEC; J. Andrew Coombs, former Executive Counsel for The Walt Disney Company; Hap Wheale, Security Director for Levi Strauss & Co.; David Simpson of Nike, Inc.; and Erik Levin - associate counsel for NBA properties.

3. I have worked on about 200 cases in the past year involving the identification of authentic and counterfeit trademarked, copyrighted and/or patented goods. I have been responsible for providing evidence in support of numerous federal Temporary Restraining Orders and I have assisted in the execution of numerous criminal search warrants and civil seizure orders involving the sale of infringing and counterfeit merchandise. Brand Security is frequently retained by companies to investigate potential theft and/or counterfeiting of their registered trademarks, copyrights and patents. This formal and informal training has given me the experience in identifying and differentiating between goods bearing genuine trademarks, copyrights and other proprietary rights, and infringements and counterfeits.

4. On or about July 11, 2007, I traveled to a retail urban clothing store located at 324 East Santa Clara Street in San Jose, CA 95133. The store is a green, single-story commercial building with green trim. The complex consists of multiple tenants, each with a different address. The name of the business, "OSIFO HIP HOP CLOTHING" is depicted over the front entrance in blue letters. The address is depicted over the front glass entrance in black numbers. A true and correct copy of a photo of the exterior of OSIFO HIP HOP CLOTHING is attached hereto as Exhibit A.

5. Upon entry into OSIFO HIP HOP CLOTHING, I observed a retail store with racks of clothing displayed throughout. I also observed several boxes of counterfeit Nike shoes. It appeared to me that a sample shoe was sitting on top of each box to identify the style contained in each box. Attached hereto as Exhibit B are true and correct copies of photos of the counterfeit shoes on display inside OSIFO HIP HOP CLOTHING.

6. I observed approximately 70 pairs of counterfeit Nike Air Force 1 shoes and 60 pairs of counterfeit Air Jordan shoes on display for sale. I then selected one pair of black/yellow Nike Air Force 1 shoes and one pair of black/orange Air Jordan shoes and requested these shoes from an African American male who was later identified as Mr. Felix Ose Osifo ("Mr. Osifo"), the owner of the store. Also present was a Hispanic female. I then purchased the shoes for a total of $108.25 by credit card and obtained a receipt. Attached hereto as Exhibit C is a true and correct copy of a photograph of the receipt. Attached hereto as Exhibit D are true and correct copies of photos of the shoes and their packaging purchased from OSIFO HIP HOP CLOTHING.

7. Immediately after leaving OSIFO HIP HOP CLOTHING, I confirmed with Nike, Inc. that the shoes I just purchased from OSIFO HIP HOP CLOTHING were counterfeit.

8. After confirmation that the shoes were counterfeit, I returned to OSIFO HIP HOP CLOTHING, identified myself, and tried to serve a cease and desist letter. At this point, Mr. Osifo started screaming and stated the following:
- Get out!
- You are trying to rob me.
- Get out!
- I don't care get out.
- No, get out you can take your papers and get out.
- I'm calling the police.

9. At that time, Mr. Osifo grabbed my clipboard and began to walk out the front door with it. I attempted to get my clipboard back but Mr. Osifo grabbed me and pushed me out of the store. Mr. Osifo then closed the door and had the Hispanic female remain inside the store. Meanwhile, Mr. Osifo ran and hid from me. I then contacted the San Jose Police Department for assistance.

10. After a few minutes, the Hispanic female was observed talking on her cellular phone and then began locking all of the doors. She then fled the scene as San Jose police officers arrived at the store. After explaining the situation to the police officers, they began searching for Mr. Osifo. As we walked behind the building, Mr. Osifo was observed peeking his head from an apartment building behind the store and then ran from the police when he saw them. The police officers located Mr. Osifo in his apartment at 24 South 7th Street in San Jose, CA 95133.

11. The police officers questioned Mr. Osifo and he stated the following in my presence:
- I did not know who they were.
- They came in yelling Nike Police, Nike Police.
- I thought that they were going to rob me.
- I was really scared so I left my employee in the store while I got away.

- I ran because I was scared.
- I did push him.
- I never put my hands on him.
- I told him let's go outside and talk about it.
- I'm not lying.
- I'm just really nervous.
- I would like to talk with my lawyer first.
- No, I don't want to turn over anything until I figure out if they are legit.
- Oh, you did.
- Well, I still want to talk with a lawyer first.
- They can inventory the shoes but I don't have any keys to get in.
- My employee left with the keys.
- Yes, this is my house.
- I only have keys to my house.

12. We then served Mr. Osifo with a cease and desist letter but Mr. Osifo refused to turn over the shoes.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 14th day of November, 2007, at Glendale, California.

_____
ERIK FERNANDEZ

# DECLARATION OF DAVID W. SIMPSON

I, David W. Simpson, declare the following:

1. I am the Director of Security for Nike, Inc. ("Nike"). I have been employed in this capacity for 14 years. As a part of my duties as Director of Security, I am charged with the directing of anti-counterfeiting enforcement activity for footwear, apparel and accessories. In that capacity I regularly review the Nike product line so that I am familiar with legitimate Nike products. Except as otherwise stated, I have personal knowledge of the facts set forth herein, and, if called as a witness, I could and would competently testify under oath as follows.

2. Nike, an Oregon Corporation having its principal offices in Beaverton, Oregon, United States of America, designs, markets, and sells footwear, apparel, and related accessories. In 1971, BRS, Inc., an Oregon corporation and the predecessor of Nike, adopted and commenced use of the word NIKE, an arbitrary distinctive emblem which has come to be known as the Swoosh Design, and a composite mark consisting of the word NIKE and the Swoosh Design as trademarks for shoes and apparel. The NIKE, NIKE AIR, NIKE and Swoosh Design, and the Swoosh Design trademarks were subsequently developed, and adopted and used by NIKE. In addition to the aforementioned Designs what has become known as the Jump Man Design, filed as Basketball Player Design, was also developed by Nike.

3. Nike has duly registered and renewed the following trademarks with the United States Patent and trademark Office:

| Trademark | Registration Number | Registration Date |
|---|---|---|
| NIKE | 1,277,066 | May 8, 1984 |
| SWOOSH Design | 1,284,385 | July 3, 1984 |
| NIKE and SWOOSH Design | 1,237,469 | May 10, 1983 |
| SWOOSH Design | 977,190 | January 22, 1974 |
| NIKE AIR | 1,571,066 | December 12, 1989 |

| | | |
|---|---|---|
| AIR JORDAN Design | 1,742,019 | December 22, 1992 (Class 18 and 25) |
| JUST DO IT | 1,875,307 | January 24, 1995 |
| SWOOSH | 1,200,529 | July 6, 1982 |
| NIKE | 1,214,930 | November 2, 1982 |
| NIKE AIR w/SWOOSH device | 1,284,386 | July 3, 1984 |
| NIKE AIR | 1,307,123 | November 27, 1984 |
| SWOOSH device | 1,323,343 | March 5, 1985 |
| NIKE w/SWOOSH device | 1,325,938 | March 19, 1985 |
| AIR JORDAN | 1,370,283 | November 12, 1985 |
| AIR MAX | 1,508,348 | October 11, 1988 |
| Jump Man device | 1,558,100 | September 26, 1989 |
| NIKE SHOX | 2,970,902 | July 19, 2005 |

4. True and correct copies of all of the aforementioned trademark registrations are collectively attached hereto as Exhibit E.

5. I examined the Nike Air Force 1 shoes and Air Jordan shoes which were purchased by Erik Fernandez of Brand Security from OSIFO HIP HOP CLOTHING. The Nike Air Force 1 shoes are black and yellow "Air Force 1" type shoes with copies of the SWOOSH, NIKE AIR w/SWOOSH, and NIKE w/SWOOSH device trademarks. The packaging also contained copies of the NIKE, SWOOSH, NIKE AIR w/SWOOSH, and NIKE w/SWOOSH device trademarks. Following examination, it was determined the shoes are counterfeit as the labeling was incorrect, and the shoes lacked airbags, a feature included with authorized shoes of this shoe style. The Air Jordan shoes are black and orange "Air Jordan" type shoes with copies of the Jump Man device trademark. The packaging also contained copies of the AIR JORDAN, NIKE AIR w/SWOOSH, and SWOOSH device trademarks. Following examination, it was determined the shoes are counterfeit as the labeling was incorrect and the shoes lacked airbags consistent with authentic product.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 9 day of November, 2007 at Beaverton, Oregon.

_____
DAVID W. SIMPSON

# EXHIBIT A

