IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NIKE, INC., <br><br> Plaintiff, <br><br> v. <br><br> FELIX OSE OSIFO, an individual and d/b/a Osifo Hip Hop Clothing and Does 1-10, inclusive <br><br> Defendants. | No. C-07-4706 CW (EDL) <br><br> **REPORT AND RECOMMENDATION RE: PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND DEFENDANT'S MOTION FOR DISMISSAL OF DEFAULT JUDGMENT** |

On September 13, 2007, Plaintiff filed this action against Defendant Felix Ose Osifo, an individual and doing business as Osifo Hip Hop Clothing for trademark infringement, trademark dilution and unfair competition.[1] After entry of default on October 29, 2007, Plaintiff filed a motion for default judgment, which was referred to the undersigned Magistrate Judge pursuant to Civil Local Rule 72-1. The motion came on for hearing on January 8, 2008. Despite not having opposed the motion for default judgment, Defendant appeared at that hearing. The Court informed Defendant that he would need to seek relief from default if he intended to defend this case, gave Defendant leave to file a response to Plaintiff's Motion for Default Judgment and set a further hearing on the default judgment motion for February 12, 2008.

On January 14, 2008, Defendant filed a response stating that he did not purchase, import, distribute or manufacture Nike footwear, that he did not profit from any unlawful activities and that he did not intentionally or maliciously intent to injure Plaintiff. Although the Court had given

---

[1] Plaintiff has elected not to pursue its trademark dilution or unfair competition claims. See Mot. for Def. J. at ii.

1  Plaintiff leave to file a response to Defendant's filing, it did not file one. Defendant did not file a
2  motion for relief from default.

3      The parties stipulated to continue the February 12, 2008 hearing to March 11, 2008 on the
4  grounds that they were discussing settlement. On March 4, 2008, Plaintiff filed a declaration of
5  counsel informing the Court that although the parties had been discussing settlement, they were
6  unable to resolve the matter. Plaintiff's counsel further stated that she has had no contact with
7  Defendant since February 20, 2008.

8      On March 11, 2008, the Court held a further hearing. After that hearing, the Court ordered
9  Defendant to file his motion to set aside default no later than March 14, 2008, and Plaintiff to file an
10 opposition no later than March 28, 2008. Defendant filed a "Motion for Dismissal of Default
11 Judgment" on March 12, 2008 and Plaintiff filed its opposition on March 27, 2008.

12     The Court construes Defendant's Motion for Dismissal of Default Judgment as a Motion to
13 Set Aside Default pursuant to Rule 55(c), and recommends denying that motion. The Court also
14 recommends granting Plaintiff's Motion for Default Judgment.

15 **Background**

16     Plaintiff Nike is engaged in the manufacture, design and sale of footwear, apparel and related
17 accessories using the NIKE trademark, or an arbitrary and distinctive trademark which has come to
18 be known as the Swoosh Design trademark, or a composite trademark consisting of the word NIKE
19 and the Swoosh Design. Compl. ¶ 6. In 1971, Nike adopted and used the NIKE and Swoosh Design
20 trademarks and subsequently registered those trademarks on May 8, 1984 and July 3, 1984
21 respectively. Compl. ¶ 7; Declaration of David Simpson ¶¶ 2-3. The composite trademark of NIKE
22 and the Swoosh Design was registered on May 10, 1983. Id.; Simpson Decl. ¶ 3. Nike obtained
23 registrations for word marks incorporating the word "air," including AIR JORDAN, AIR MAX, and
24 AIR TRAINER, and a variety of devices including a silhouette of a man jumping in mid-air called
25 the Jump Man Device. Compl. ¶ 8; Simpson Decl. ¶¶ 2-3.

26     Nike's trademarks are in full force and effect, and many have become incontestable. Compl.
27 ¶ 8. The Nike trademarks are distinctive when applied to the high quality apparel, footwear and
28 related merchandise that signifies that the products come from Nike and are manufactured to the

highest quality standard. Id. Nike sells in excess of $4,500,000,000 per year in merchandise. Compl. ¶ 10.

Defendant Felix Ose Osifo, an individual and doing business as Osifo Hip Hop Clothing, are involved in the manufacture, purchase, distribution, offering for sale and/or sale of counterfeit and/or infringing footwear bearing the Nike trademarks to the general public. Compl. ¶ 11. Defendants operate a retail outlet in San Jose, California. Id. Defendants persist in selling counterfeit merchandise infringing the Nike trademarks despite receiving cease and desist letters from Nike. Id.

On or about July 11, 2007, an investigator for Nike traveled to Defendants' store and purchased one pair of counterfeit Nike Air Force I shoes and one pair of Nike Air Jordan shoes. Declaration of Erik Fernandez ¶¶ 4-6; Simpson Decl. ¶ 5. The investigator confronted Defendant Osifo and tried to serve a cease and desist letter. Fernandez Decl. ¶¶ 7-8. Defendant ran away from the investigator, and was subsequently located by San Jose police officers. Fernandez Decl. ¶¶ 9-11.

**Motion to Set Aside Default**

Federal Rule of Civil Procedure 55(c) provides that a court may set aside a default for "good cause shown." The "good cause" standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Federal Rule of Civil Procedure 60(b). See Franchise Holding II v. Huntington Restaurants Group, 375 F.3d 922, 925-26 (9th Cir. 2004). There are three factors that courts consider in determining whether good cause exists to set aside an entry of default: 1) whether the moving party engaged in culpable conduct that led to the default; 2) whether the moving party has a meritorious defense; or 3) whether setting aside the entry of default will prejudice the non-moving party. See Franchise Holding, 375 F.3d at 925-26. A court can deny the motion to set aside default if any of these factors is true. Id. The moving party bears the burden of establishing grounds for setting aside the entry of default. See id. at 926.

The first factor weighs against Defendant's Motion for Dismissal of Default. Indeed, if a defendant "'has received actual or constructive notice of the filing of the action and failed to answer,' its conduct is culpable." Franchise Holding, 375 F.3d 926 (quoting Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc., 840 F.2d 685, 690 (9th Cir.1988)). Here, Defendant does

not dispute that he had notice of the filing of the action.  Plaintiff has provided a proof of service showing personal service of the summons and complaint on Defendant on September 26, 2007.  <u>See</u> Wang Decl. in Opp. to Def.'s Mot. for Dismissal of Default J. Ex. B.  Plaintiff received correspondence from Defendant on or about October 11, 2007 concerning this case.  <u>See</u> Wang Decl. in Support of Mot. for Default J. ¶ 3.  Moreover, Defendant concedes in his January 14, 2008 Response to Claim and his March 12, 2008 Motion for Dismissal of Default Judgment that he sent a letter dated October 1, 2007 to Plaintiff.  <u>See</u> Response to Claim at ¶ 4; Mot. for Dismissal of Def. J. at ¶ 4.  Defendant had actual notice of this lawsuit shortly after it was filed, yet failed to respond.

To justify setting aside default under the second factor, a defendant must "present the district court with specific facts that would constitute a defense." <u>Franchise Holding</u>, 375 F.3d at 926 (citing <u>Madsen v. Bumb</u>, 419 F.2d 4, 6 (9th Cir.1969)).  Here, Defendant has only made conclusory statements in support of his request for relief.  Defendant claims that he had no knowledge that the shoes were counterfeit and no intent to infringe, which do not constitute defenses to trademark infringement.  <u>See</u> <u>Coca-Cola Co. v. Overland, Inc.</u>, 692 F.2d 1250, 1256 (9th Cir. 1982) ("Good faith or lack of wrongful intent does not provide a valid defense to a charge of trademark infringement.").  With respect to the third factor, Plaintiff's showing of prejudice is insufficient to justify denying relief from default.  Plaintiff states that it will incur substantially more costs in prosecuting this action if default is set aside, but that is not a sufficient reason for setting aside default.  "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case.  Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'"  <u>TCI Group Life Ins. Plan v. Knoebber</u>, 244 F.3d 691, 701 (9th Cir. 2001) (internal citations omitted).  Accordingly, Defendant's default should not be set aside.

**Motion for Default Judgment**

Federal Rule of Civil Procedure 55(b)(2) authorizes the Court to enter judgment against a defendant against whom a default has been entered, assuming that defendant is not an infant, is not incompetent or in military service.  Defendants here are not unrepresented minors, incompetent or in military service.  Declaration of Annie Wang ¶¶ 6-7.

"The general rule of law is that upon default the factual allegations of the complaint, except

4

those relating to the amount of damages, will be taken as true." Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977) (citing Pope v. United States, 323 U.S. 1, 12 (1944)). In exercising its discretion to grant default judgment, the court may consider the following factors: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Generally, upon entry of default, the factual allegations of the complaint are taken as true, except for those relating to damages. See Televideo Systems, Inc. v. Heidenthal, 826 F.2d 915, 917 (9th Cir.1987).

Here, the Eitel factors weigh in favor of default judgment. Most importantly, the substantive claims in the complaint appear to have merit and the complaint is sufficient to state those claims. To prevail on a trademark infringement claim, a plaintiff must prove the existence of a valid trademark and the subsequent use of that mark by another in a manner likely to create consumer confusion. See Applied Information Sciences Corp. v. eBay, Inc., 511 F.3d 966, *2 (9th Cir., Dec.28, 2007).

Registration of a mark on the principal register in the Patent and Trademark Office is prima facie evidence of the validity of the mark. See id.; 15 U.S.C. § 1115(a) (stating that registration of a mark "on the principal register provided by this chapter and owned by a party to an action shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce. . . ."). In its complaint and through declarations, Nike has met the first prong of the test for trademark infringement by showing that it owns various registered trademarks. Compl. ¶¶ 7-8, Ex. A; Simpson Decl. ¶ 4; Wang Decl. ¶ 8, Ex. E.

The Ninth Circuit considers eight factors to assess the likelihood of confusion: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and degree of care likely to be used by the purchaser;

5

1  (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines.
2  AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979), abrogated in part on other
3  grounds by Mattel, Inc. v. Walking Mountain Prods., 353 F.3d 792, 810 n. 19 (9th Cir.2003).  In
4  addition, "[w]hen the alleged infringer knowingly adopts a mark similar to another's, [a court] must
5  presume that the public will be deceived."  M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073,
6  1085 (9th Cir. 2005).

7  In its complaint, Nike has sufficiently alleged the likelihood of confusion pursuant to the
8  Sleekcraft factors.  Nike alleges the strength of its trademarks that "have acquired secondary and
9  distinctive meaning among the public who have come to identify the Nike Trademarks with Nike
10 and its products."  Compl. ¶ 28.  Where, as here, the goods at issue are "related or complementary,"
11 the likelihood of confusion is heightened.  M2 Software, 421 F.3d at 1082.  Nike alleges that it sells
12 apparel, footwear, watches, jewelry and related merchandise (Compl. ¶ 15) and that Defendant has
13 used the Nike trademarks in conjunction with the manufacture, purchase, distribution and sale of
14 footwear (Compl. ¶ 16).  The marks at issue in this case are not only similar, but appear to be
15 identical.  Compl. ¶¶ 17, 45.  Nike has alleged actual confusion.  Compl. ¶¶ 17-19 (stating that
16 Defendant's conduct "has and is likely to cause confusion, deception, and mistake or to deceive as to
17 the source and origin of the footwear and related merchandise in that the buying public will
18 conclude that the products sold by Defendants are authorized, sponsored, approved or associated
19 with Nike," and that "Defendants' activities have also caused actual confusion with consumers as to
20 the source and origin of such footwear and other merchandise.").  The marketing channels used by
21 the parties are similar; Defendant uses a retail outlet (Compl. ¶ 11) and Nike has a substantial retail
22 presence, including its own stores and third party retail stores (Compl. ¶¶ 6, 28).  See M2 Software,
23 421 F.3d at 1083 ("'Convergent marketing channels increase the likelihood of confusion.'")
24 (quoting Nutri/System, Inc. v. Con-Stan Indus., Inc., 809 F.2d 601, 606 (9th Cir.1987)).  Nike has
25 alleged that because Defendant has duplicated Nike's trademarks, the purchaser would be deceived
26 into believing that Defendant's products are endorsed by or associated with Nike.  Compl. ¶ 29.
27 With respect to Defendant's intent, "[w]hen the alleged infringer knowingly adopts a mark similar to
28 another's, [a court] must presume that the public will be deceived."  M2 Software, 421 F.3d at 1085

6

United States District Court
For the Northern District of California

1  (citing Sleekcraft, 599 F.2d at 354).  Nike has not made any allegations regarding expansion of
2  product lines, but even if this factor weighed against finding a likelihood of confusion, it is
3  substantially outweighed by the remaining Sleekcraft factors.
4       The remaining Eitel factors also weigh in favor of granting default judgment.  First, if the
5  motion were denied, Nike would be prejudiced because it would likely be without a remedy.
6  Although Nike's counsel received correspondence from Defendant on or about October 11, 2007,
7  Defendant had not contacted counsel up until the time that he spoke with counsel at the default
8  judgment hearing, and Defendant has not answered the complaint.  Wang Decl. ¶ 3; see Pepsico, Inc.
9  v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default
10 judgment is not granted, Plaintiffs will likely be without other recourse for recovery.").  Second, the
11 amount of money sought, $150,000, is not disproportionate or unreasonable given the extent of
12 Defendant's infringement and the number of trademarks involved.  Finally, because Defendants did
13 not file an answer to the complaint, there is little to suggest that there is a possibility of a dispute
14 concerning material facts.  Nor is it likely that Defendants' default was due to excusable neglect.
15 Nike attempted to follow up with Defendant after Defendant's initial contact with Nike's counsel,
16 but Defendant did not respond.  Wang Decl. ¶ 3.
17      Accordingly, the motion for default judgment should be granted.  The remaining issue is the
18 amount of the judgment.
19 **Damages for trademark infringement**
20      Nike has elected to seek statutory damages under the Lanham Act for Defendant's use of a
21 counterfeit mark.  15 U.S.C. § 1117(c) (providing for statutory damages of not less than $500 or
22 more than $100,000 per counterfeit mark per type of goods or services sold, offered for sale, or
23 distributed).  To invoke § 1117's monetary remedies against counterfeiting, Nike must establish that:
24 (1) Defendant intentionally used a counterfeit mark in commerce; (2) knowing the mark was
25 counterfeit; (3) in connection with the sale, offering for sale, or distribution of goods; and (4) its use
26 was likely to confuse or deceive.  State of Idaho Potato Comm'n v. G&T Terminal Packaging, Inc.,
27 425 F.3d 708, 721 (9th Cir. 2005).  Nike also contends that because Defendant acted willfully, Nike
28 is entitled to increased statutory damages of up to one million dollars per counterfeit mark per type

of goods sold. 17 U.S.C. § 1117(c)(2). However, Nike seeks a total award of $150,000 for the willful infringement of its trademarks, constituting $25,000 for each of the six trademarks that were infringed.

Nike has met the State of Idaho standard and is entitled to $150,000 in statutory damages. Nike alleges that Defendant intentionally appropriated Nike's trademarks to sell its counterfeit merchandise with the knowledge that the trademarks belonged to Nike and for the purpose of misappropriating Nike's goodwill and business reputation, at Nike's expense. Compl. ¶¶ 45, 47; see also Simpson Decl. ¶ 5 (shoes purchased from Defendant's store were counterfeit). Nike has also alleged that consumers are likely to be confused by the counterfeit products. Compl. ¶¶ 17-19. Moreover, Nike has demonstrated Defendant's willfulness. Compl. ¶ 29 (Defendant was not authorized to manufacture, purchase, distribute, offer for sale and sell the counterfeit products that duplicated and appropriated the Nike trademarks); see Fernandez Decl. ¶¶ 5-6 (approximately 70 pairs of counterfeit Nike Air Force I shoes and 60 pairs of counterfeit Nike Air Jordan shoes on display in Defendant's store). The Court has discretion to award up to $100,000 per counterfeit mark per type of goods sold pursuant to § 1117(c). In this case, the record reflects that Defendant operates a "series of retail outlets in the greater San Jose area" (Compl. ¶ 1), and has engaged in willful counterfeiting of Nike's trademarks. Given the value of Nike's famous marks, the willfulness of Defendant's conduct and Defendant's failure to abide by a cease and desist letter, an award of $150,000, reflecting $25,000 for each of six counterfeit marks, is reasonable and will likely serve to deter Defendant and others from engaging in this type of trademark infringement in the future. See Nike, Inc. v. B&B Clothing Co., 2007 WL 1515307, *3 (E.D. Cal., May 22, 2007) ("An award of $100,000 for four counterfeit marks is at least commensurate with the value of plaintiff's famous marks and also in line with defendants' 'willful sale of unlicensed and counterfeit products' and defendants' persistence in the unlawful sale of counterfeit merchandise 'despite prior notice to them in the form of cease and desist letters served upon them or their employees.'").

**Injunctive relief**

Under the Lanham Act, the Court may grant an injunction. 15 U.S.C. § 1116(a); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180-81 (9th Cir. 1988) ("Injunctive relief is the

remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."). Further, injunctive relief is available as part of a default judgment. See Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 502 (C.D. Cal. 2003).

Here, Nike alleges that unless Defendant's conduct is enjoined, Nike will suffer irreparable injury to its goodwill and reputation. Compl. ¶ 21. Nike has also provided evidence demonstrating that Defendant is using Nike's trademarks to sell counterfeit goods. Fernandez Decl. ¶¶ 4-7; Simpson Decl. ¶ 5. The threat of continued infringement is real based on Defendant's failure to remain in contact with Nike's counsel, or to participate in this case. Therefore, the Court recommends permanently enjoining Defendant from further infringement of Nike's trademarks.

**Conclusion**

The Court recommends denying Defendant's Motion for Dismissal of Default Judgment and granting Plaintiff's motion for default judgment in the total amount of $150,000.00 plus post-judgment interest pursuant to 28 U.S.C. § 1961(a). The Court also recommends entering the permanent injunction sought by Nike:

> Defendant and his agents, servants, employees and all persons in active concert and participation with him who receive actual notice of the Injunction are hereby restrained and enjoined from:
>
> a) Infringing the Nike Trademarks, either directly or contributorily, in any manner, including generally, but not limited to manufacturing, importing, distributing, advertising, selling and/or offering for sale any unauthorized product which features any of the Nike Trademarks ("Unauthorized Products"), and specifically from:
>
> i) Importing, manufacturing, distributing, advertising, selling and/or offering for sale the Unauthorized Products or any other unauthorized products which picture, reproduce, copy or use the likenesses of or bear a confusing similarity to any of the Nike Trademarks;
>
> ii) Importing, manufacturing, distributing, advertising, selling and/or offering for sale in connection thereto any unauthorized promotional materials, labels, packaging or containers which picture, reproduce, copy or use the likenesses of or bear a confusing similarity to any of the Nike Trademarks;
>
> iii) Engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead or deceive purchasers, Defendant's customers and/or members of the public to believe, the actions of Defendant, the products sold by Defendant, or Defendant himself is connected with Nike, is sponsored, approved or licensed by Nike, or is affiliated with Nike;

iv) Affixing, applying, annexing or using in connection with the importation, manufacture, distribution, advertising, sale and/or offer for sale or other use of any goods or services, a false description or representation, including words or other symbols, falsely describing or representing such goods as being those of Nike.

Any party may serve and file specific written objections to this recommendation within ten (10) business days after being served with a copy.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); Civil Local Rule 72-3 .  Failure to file objections within the specified time may waive the right to appeal the District Court's order.

Dated: May 13, 2008

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge